IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

**Consolidated for all purposes**

SUMMIT ELECTRIC SUPPLY CO.,

        Plaintiff/Counter-Defendant,

vs.                          No. CIV 00-378 LH/LFG-ACE

BAAN U.S.A., INC.,

        Defendant/Counter-Claimant.


SE TECHNOLOGIES, INC.,

        Plaintiff/Counter-Defendant,

vs.                          No. CIV 00-1511 LH/LFG-ACE

SUMMIT ELECTRIC SUPPLY CO., INC.,

        Defendant/Counter-Claimant

**MEMORANDUM OPINION AND ORDER**

THIS MATTER comes before the Court on the Motion for Protective Order [Doc. 49] filed February 6, 2001 by SE Technologies, Inc. ("SE"), and on the Motion to Compel SE's Response to Interrogatories [Doc. 55], filed February 21, 2001 by Summit Electric Supply Co, Inc. ("Summit"). For the reasons given below, each motion is granted in part and denied in part. This case involves claims for breach of contract, misrepresentation, and unfair business practices. Summit purchased a comprehensive computer system from Baan U.S.A., Inc. ("Baan"), and hired SE to implement the

Baan software, customizing it as necessary for Summit's purposes. Summit now alleges that the software failed to perform in substantial accordance with the representations made by Baan and SE, and that employees of both defendants made false and misleading statements regarding the capabilities of the software and the capabilities of the implementation personnel, inducing Summit to purchase the software from Baan and to contract for implementation services with the SE, to its substantial detriment.

Summit originally sued Baan only, in state court. The case was removed to federal court, under case number Civ. 00-378 LH/LFG, and Baan filed an answer and counterclaim. Sometime thereafter, SE sued Summit in federal court on issues arising from the implementation contract, under case number Civ. 00-1511 BB/RLP. Summit filed an answer and counterclaim in that case, which was thereafter consolidated with Civ. 00-378 LH/LFG. SE alleges in its complaint that Summit owes it money on the implementation contract. Summit denies this and alleges in its counterclaim that SE breached the contract; it seeks damages for the breach as well as for unfair business practices and misrepresentation.

Specifically, Summit asserts that SE represented to Summit that its methodology for implementation of the Baan software had proven successful in the past, that SE would make available for the Summit project employees who had expertise and experience necessary to adequately implement the software, and that the Baan software was appropriate for Summit's business and could be successfully implemented. However, Summit alleges, implementation of the software was a complete failure, and SE did not offer to correct the deficiencies at no further cost to Summit, thus leading to termination of the contract. (Counterclaim, ¶¶ 6-11).

In Count I of its counterclaim (¶¶ 12-15), based on the New Mexico Unfair Practices Act,

2

Summit alleges that SE knowingly made false or misleading statements in connection with its expertise and experience in implementing Baan software and in connection with the suitability of Baan software for Summit's business, on which Summit relied in deciding to contract with SE. In Count II (¶¶ 16-18), based on breach of contract, Summit alleges that SE undertook to use reasonable skill and to provide implementation services in a good and workmanlike manner but failed to do so. In Count III (¶¶ 19-20), Summit claims that SE's misrepresentations as described above were done maliciously or recklessly, thus entitling Summit to punitive damages.

The interrogatories under dispute were served on SE by Summit and seek information on SE's clients other than Summit, including their names, addresses, contact information, and the dates, nature, and billing rate on projects for these other clients. Summit claims that such information is relevant to SE's expertise and experience in implementing software and advising as to its suitability. SE asserts that the discovery sought is "harassing in nature," constitutes an unreasonable intrusion into SE's business relations and an invasion of its clients' privacy, and that a protective order is necessary to preserve SE's interest in preventing Summit or its attorneys from contacting SE's clientele and "potentially disrupt[ing] or injur[ing] SE's relationships with other clients."

As SE correctly points out, this dispute is governed by Fed. R. Civ. P. 26(b)(1), which was recently amended. The former rule made available for discovery "any matter, not privileged, which is relevant to the subject matter involved in the pending action"; the new standard, effective December 1, 2000, narrows the boundaries of allowable discovery to "any matter, not privileged, that is relevant to the claim or defense of any party." Material that is merely "relevant to the subject matter" may still be discovered, but only upon court order and for good cause shown.

Although the difference is murky at best between items "relevant to the subject matter

3

involved in the pending action" and that "relevant to the claim or defense of any party" – "the juridical equivalent to debating the number of angels that can dance on the head of a pin" – it is clear that "the new rule represents a change from the old version, and that, unless expanded by the court for good cause shown, it is intended that the scope of discovery be narrower than it was, in some meaningful way." Thompson v. Dept. of HUD, No. Civ.A. MJG-95-309, 2001 WL 258390 at *4 (D. Md. Mar. 13, 2001). *See also*, Fed. R. Civ. P. 26, Advisory Committee Notes to 2000 Amendment, 192 F.R.D. 340, 388-390:

> The Committee has heard that in some instances, particularly cases involving large quantities of discovery, parties seek to justify discovery requests that sweep far beyond the claims and defenses of the parties on the ground that they nevertheless have a bearing on the 'subject matter' involved in the action . . . The amendment is designed to involve the court more actively in regulating the breadth of sweeping or contentious discovery . . . The Committee intends that the parties and the court focus on the actual claims and defenses involved in the action. The dividing line between information relevant to the claims and defenses and that relevant only to the subject matter of the action cannot be defined with precision.

However, while the pleadings are the starting point for the inquiry, "it would be a mistake to argue that no fact may be discovered unless it directly correlates with a factual allegation in the complaint or answer." Thompson, at *4. In addition, "[a] variety of types of information not directly pertinent to the incident in suit could be relevant to the claims or defenses raised in a given action. For example, other incidents of the same type . . .." Advisory Committee Notes, 192 F.R.D. at 389.

Information on SE's experience in implementing Baan software for other clients prior to its work on the Summit project, including the nature of such prior work, is relevant to the allegation that SE misled Summit with regard to its experience and expertise in working with the Baan software.

4

Information on the pre-Summit project experience of the particular SE employees named in Interrogatory 2, who presumably worked on the Summit project, is relevant to this same allegation, as well as to the claim that SE falsely represented that it would make available employees with the expertise for a successful implementation.

Information as other projects on which SE employees worked around the time of the Summit project (between April 1, 1997 and December 31, 1998), and projects for other clients which SE commenced between those dates, is relevant to Summit's claims that SE failed to make available employees with the necessary expertise and that it breached its agreement with Summit in that it removed SE employees from the Summit project so that they could work for other clients at higher rates. Although this latter charge is not specifically raised in the counterclaim but rather comes in Summit's brief in support of its motion to compel, the Court finds that this allegation is part of the "claim or defense" for purposes of new Rule 26(b)(1), as it is included within the breach of contract allegation and, as noted above, the information sought need not "directly correlat[e] with a factual allegation in the complaint or answer." Thompson, at *4.

Although general information as to the prior experience of SE and its employees in implementing the Baan software, and general information as to other projects on which SE was engaged during the time of the Summit project, are discoverable, the Court finds that SE's interest in protecting the names and contact information of its customers, and the billing rates on projects other than the one for Summit, outweighs Summit's need for this information. The billing rate may be relevant to the claim that SE moved its employees to more lucrative projects; however, the Court is admonished in new Rule 26(b)(1) that "All discovery is subject to the limitations imposed by Rule 26(b)(2)," and finds that the billing rate information is sufficiently sensitive in a competitive business

5

environment that "the burden . . . of the proposed discovery outweighs its likely benefit, taking into account the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the litigation, and the importance of the proposed discovery in resolving the issues." Fed. R. Civ. P. 26(b)(2)(iii).

IT IS THEREFORE ORDERED that Summit's Motion to Compel [Doc. 55] is granted in part and denied in part, and SE is ordered to answer the disputed interrogatories, to the following extent only:

1. Interrogatory 1(H): SE must supply all information requested, except the name, address, personal contact, and telephone number of the clients for whom each person worked during the period;

2. Interrogatory 1(L):  SE need not answer;

3.  Interrogatory 2(A, B):  SE need not answer, except that it must state, for each named employee, the number of clients and a description of the nature of the projects;

4. Interrogatory 2(C):  SE need not answer;

5. Interrogatories 3 and 4:  SE must supply all information requested, with the exception of the names of the customer(s);

6. Interrogatory 5: SE must supply all information requested, with the exception of the name, address, telephone number, and customer contact for each customer.

IT IS FURTHER ORDERED that SE's Motion for a Protective Order [Doc. 49] is granted in part and denied in part, as is consistent with the above ruling on Summit's Motion to Compel.

_____
Lorenzo F. Garcia
United States Magistrate Judge

6